

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-238-CV

IN THE INTEREST OF T.L.S. AND
R.T.S., CHILDREN

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This appeal concerns a motion to modify the parent-child relationship
between Appellant Barbara,[2] Appellee Philip, and their two children from their
prior marriage—T.L.S. and R.T.S. In her first, second, and third issues, Barbara
appeals the trial court's modification of a geographical restriction contained in

------------

[1] *See* Tex. R. App. P. 47.4.

[2] To protect the privacy of the parties involved in this appeal, we
identify the children by initials only and Appellant and Appellee by their first
names only. *See* Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008).

the parties' agreed divorce decree. In her fourth and fifth issues, Barbara appeals the trial court's award of attorney's fees to Philip. We reverse and render in part and reverse and remand in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Barbara and Philip divorced in August 2004. The parties agreed in their divorce decree that Barbara, as the custodial joint managing conservator for their two children, would have the right to establish the primary residence for the children "within [a] 30 mile radius of Mansfield, Tarrant County, Texas." Allegedly, in March 2007, Philip learned that Barbara intended to violate the geographical restriction and relocate herself and the two children to Richardson, Texas. Philip alleges that T.L.S.'s friend told him that Barbara intended to move outside the geographical restriction so that their daughter could play on a different softball team.

Philip filed an emergency motion to modify the parent-child relationship and request for temporary restraining order on March 30, 2007. Barbara, in her response, alleged that she had not "at this time" made any arrangements to relocate her primary residence.

On May 8, 2007, Barbara filed a motion to clarify the geographical restriction. She requested that the trial court find that the thirty-mile radius be measured from any point fixed within the city limits of Mansfield, ostensibly so

2

that she could in fact move to areas within Richardson, Texas, without violating the agreed to geographical area. The trial court held a hearing and ultimately issued temporary orders restricting Barbara from moving the two children's primary residence from Mansfield.

Barbara also filed her own motion to modify asking the trial court to modify and extend the geographical restriction to allow her the right to establish the children's primary residence to include Tarrant and contiguous counties. Ultimately, Barbara proposed a parenting plan that asked the court to either extend the geographical restriction to include Tarrant and contiguous counties, or in the alternative, to leave the current thirty-mile restriction in place. The trial court held a hearing concerning the cross-motions to modify on February 1, 2008.

The trial court had previously appointed Donna Kelly-Powell to counsel the parties and their children. The court ordered that all parties attend a minimum of five sessions.

At the February 1 hearing, Kelly-Powell testified that she saw the children in individual sessions and saw Barbara and Philip in one individual session each. Kelly-Powell said she then saw Barbara and Philip in one joint session. Kelly-Powell stated that Barbara cancelled all future joint sessions alleging that, "I just didn't feel like that we accomplished anything." Kelly-Powell continued to see

3

the two children individually, and would discuss the children's progress with either Barbara or Philip, depending on who brought them. Kelly-Powell eventually began to see R.T.S. more frequently than T.L.S. because, according to Kelly-Powell, "he was the one who was having more difficulty." Kelly-Powell began to believe that R.T.S. might be suffering from a variety of problems including: problems adapting to new situations, moderate anxiety, inattentiveness, and mild to moderate problems associated with social and study skills. Kelly-Powell eventually recommended that R.T.S. see psychologist Dr. Daniel Lowrance.

Lowrance testified that although Kelly-Powell had wanted testing regarding whether R.T.S. had attention-deficit hyperactivity disorder, bipolar disorder, and other problems, his diagnosis was that R.T.S. actually suffered from "agitated depression" that was situational and mostly due to his relationship with his father and having to live in a two-bedroom apartment where he was constantly in "close proximity to his sister."

Both Barbara and Philip testified about why they believed that the geographical restriction should be changed. Philip testified that he wanted the geographical restriction to constrict to include only Mansfield,[3] while Barbara

---

[3] Although Philip testified that he wanted the geographical restriction constricted to include only Mansfield, in his first amended motion to modify the

4

testified that although due to work and school she preferred the geographical restriction to expand, she was fine with what the parties had originally agreed to. At the close of the hearing, the trial court ordered that Barbara move into a three-bedroom residence within thirty days and constricted the geographical area so that Barbara could only establish the children's primary residence to be located within "Mansfield or the Arlington ISD." Per Barbara's request, the trial court issued findings of fact and conclusions of law. The trial court specifically found that "[it] is in the best interest of the children that [Barbara] have the exclusive right to designate that the children's primary residence [be] within the geographical area of the Mansfield ISD or Arlington ISD." This appeal followed.

### III. DISCUSSION

#### A. Modification of Previous Conservatorship Order

In her first, second, and third issues, Barbara argues that the trial court abused its discretion in finding a material and substantial change in circumstances to warrant modification of the residence restriction. We agree.

---

parent-child relationship, Philip requested that the court modify the geographical restriction be limited to "Mansfield or the Arlington Independent School District."

### 1.    Standard of Review

We review a trial court's order modifying conservatorship under an abuse of discretion standard.  *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).  The trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to any guiding principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279 (1986).  Legal and factual sufficiency of the evidence are not independent grounds of error, but relevant factors in determining whether the trial court abused its discretion.  *In re T.D.C.*, 91 S.W.3d at 872; *In re Marriage of Bertram*, 981 S.W.2d 820, 822 (Tex. App.—Texarkana 1998, no pet.).

In determining whether the trial court abused its discretion in modifying conservatorship, we apply a two-pronged test:  (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *In re T.D.C.*, 91 S.W.3d at 872. That is, first we determine whether the evidence was legally and factually sufficient for the trial court to support a decision on modification and, second, whether the decision made was reasonable.  *Id.*  A clear failure by the trial court to analyze or apply the law to the facts correctly is an abuse of discretion.

6

*In re M.N.G.*, 113 S.W.3d 27, 32 (Tex. App.—Fort Worth 2003, no pet.); *see Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

In conducting a legal sufficiency, or "no evidence" review, we consider the evidence in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary unless a reasonable factfinder could not do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005). We do not disregard contrary evidence if (a) there is no favorable evidence, or (b) contrary evidence renders supporting evidence incompetent, or (c) contrary evidence conclusively establishes the opposite. *City of Keller*, 168 S.W.3d at 810–11. Anything more than a scintilla of probative evidence is legally sufficient to support the trial court's finding. *In re T.D.C.*, 91 S.W.3d at 872.

In determining whether the evidence was factually sufficient to support the trial court's judgment, we review the trial court's findings under the same standards used in reviewing jury answers. *In re Z.B.P. & J.N.P.*, 109 S.W.3d 772, 776–77 (Tex. App.—Fort Worth 2003, no pet.). We consider all the evidence and set aside the findings only if we find that they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*; *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## 2.    Material and Substantial Change

In an effort to ensure stability and continuity for children, Texas law has imposed "significant hurdles" before a conservatorship order may be modified. *Bates v. Tesar*, 81 S.W.3d 411, 426 (Tex. App.—El Paso 2002, no pet.). Specifically, a trial court may modify a conservatorship order only if "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the previous order and modification would be in the child's best interest.    Tex. Fam. Code Ann. § 156.101 (Vernon 2008).

Under this scheme, the threshold question is whether a material and substantial change of circumstances has occurred because the original decree is res judicata of the children's best interest. *Watts v. Watts*, 563 S.W.2d 314, 316 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.).    Absent a material and substantial change of circumstances, revisiting the prior determination of best interest is inappropriate. *In re M.N.G.*, 113 S.W.3d at 34.    The burden is on the moving party to show a material and substantial change in circumstances; otherwise, the trial court must deny the motion. *See Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied).

In deciding the material and substantial change of circumstances question, a trial court is not confined to rigid or definite guidelines. *In re Z.B.P.*,

109 S.W.3d at 779. Instead, the court's determination is fact-specific and must be made according to the circumstances as they arise. *Zeifman*, 212 S.W.3d at 593. But, by design, the evidence must show more than a simple showing that a requested modification would be in the children's best interest. *See* Tex. Fam. Code Ann. § 156.101(1).

### 3. Evidence of Changed Circumstances

In this case, there are two distinct categories of evidence on which the trial court could have relied to determine whether there had been a material and substantial change: (1) the evidence of Barbara's desire to move to Richardson, and (2) the evidence of R.T.S.'s psychological condition.

### a. Barbara's Desire to Move

At the modification hearing, Philip testified that Barbara had relayed to him that it was her intention to move as close to Richardson as she could under the original divorce decree's thirty-mile radius provision. Philip said that if Barbara moved to the outer boundary of that restriction, his midweek visitations would probably "become a traffic impossibility." Philip further averred that he had "trust issues" with Barbara regarding where she might move the children within the thirty-mile restriction. He also testified that he would "like to know exactly where" Barbara intended to move the children and that it was his preference that the children stay "where they [would] be close to their father."

9

None of this testimony by Philip is evidence of a change of circumstances. Philip may not have appreciated the difficulty he would encounter by agreeing to the original geographical restriction, but that difficulty would not be due to anything that happened after the divorce decree. The possibility that Barbara would move to the outer boundary of the thirty-mile restriction was contemplated at the time of the original agreement. None of Philip's testimony regarding possible difficulties in traveling within the thirty-mile restriction could serve as sufficient evidence on which the trial court could have exercised its discretion.

Other evidence of a potential change of circumstances in the record is the allegation that Barbara intended to move to Richardson beyond the thirty-mile radius. But the record clearly demonstrates that when Barbara did move, she moved from her home in Mansfield to a two-bedroom apartment—in Mansfield. Both of these locations were within the thirty-mile restriction. This testimony also cannot serve as sufficient evidence on which the trial court could have exercised its discretion.

Still regarding Barbara's attempts to move, the only other evidence in the record that would suggest that circumstances had changed was the testimony of Kelly-Powell—the court-appointed counselor—who testified that she believed R.T.S. would benefit from staying within the Mansfield ISD, more specifically

10

in his current school. But this testimony, admittedly, was predicated on the same perceived difficulties Philip testified to—that Barbara moving outside of Mansfield "would [move the children] further away, that it would be more difficult for [Philip] to be able to see them as often, and he would not be able to be as involved in their lives."

The trial court was obviously swayed by the testimony concerning the difficulties Philip would face in traveling to the outer boundary of the original thirty-mile restriction. The trial court stated that its decision to constrict the original geographical restriction was because "a commute [of thirty miles] . . . would interfere with [Philip's] ability to have a relationship with his children." But the ultimate restriction imposed by the trial court was inconsistent with the counselor's request that R.T.S. be restricted to living in Mansfield. The trial court's imposed restriction was that the children not be moved from Mansfield *or* Arlington. This is the exact restriction requested by Philip in his motion to modify.

Thus, if the modification to the geographical restraint was predicated on Kelly-Powell's or Philip's testimony regarding the difficulties encountered traveling within the original agreed-to area, the trial court erred in exercising its discretion. And if the modification was predicated on the counselor's testimony, the trial court arbitrarily conformed the restriction to Philip's request,

11

rather than Kelly-Powell's testimony.  Either way, based on this evidence, the trial court acted arbitrarily and unreasonably and abused its discretion in modifying the original geographical restriction.

### b.    Evidence of R.T.S.'s Emotional Problems

There is some evidence in the record that R.T.S. was experiencing emotional difficulties, including anger toward his father and sister.  Kelly-Powell testified that R.T.S. would have difficulty changing to "*another school* . . . because of his emotion and social difficulties."  [emphasis added] Kelly-Powell attributed R.T.S.'s difficulties to having been "put in the center" of the parents's struggles.  Kelly-Powell also testified that she had referred the parties to a psychologist—Dr. Lowrance.

Lowrance testified that R.T.S.'s difficulties were "situational" and stemmed mostly from R.T.S. having to live in a two-bedroom apartment where he shared "one room for all of [his and his sister's] things."  Lowrence testified that there was nothing to indicate that R.T.S.'s difficulties required any special care that R.T.S. could not receive from another school district of comparable size to Mansfield.  When asked if R.T.S. would have difficulty changing schools, Lowrence stated, "[n]one that I'm aware of."  Lowrence also testified that R.T.S. had expressed to him that he preferred to move to a different school.  When asked whether it was relevant that R.T.S. lived in "Mansfield . . .

12

[or Fort] Worth . . . [or] Keller," Lowrence replied, "It's not the building that's causing the problem." Ultimately, Lowrence testified that what would be most helpful to R.T.S. would be "if [his] mother got where [R.T.S.] had his own facility, his own room and some space."

Assuming that the trial judge disregarded all of Lowrence's testimony and believed only Kelly-Powell, the modified geographical restriction is still inconsistent with Kelly-Powell's testimony, which recommended leaving R.T.S. in his current school. The trial court's ultimate restriction was that the children not be moved from Mansfield *or* Arlington. Again, this is the exact restriction requested by Philip. But the trial court was obviously swayed by Lowrence's testimony. The trial court imposed an order on Barbara that she "get a three-bedroom where each child has their own room within 30 days." The trial court even chided Barbara for having moved to a "cramped apartment" and stated that R.T.S.'s anger toward Philip was Barbara's "fault" for not currently living in a three-bedroom apartment.

The trial court determined, in its findings of fact, that it would be in the best interest of the children to modify the previous geographical restriction by constricting Barbara's right to designate the children's primary residence to Mansfield ISD or Arlington ISD. There is simply no evidence to support this modification. Thus, the trial court should not have exercised its discretion, and

13

if it should have, it acted arbitrarily and unreasonably and abused its discretion in modifying the original geographical restriction. We hold that the trial court abused its discretion in modifying the original divorce decree's geographical restriction and sustain Barbara's first, second, and third issues.

## B. Attorney's Fees

### 1. Attorney's Fees for Appeal

In her fourth issue, Barbara asserts that there was no evidence concerning attorney's fees in case of an appeal to this court. Thus, Barbara argues, the trial court abused its discretion in awarding them. We agree.

All of the evidence presented to the trial court concerning attorney's fees specifically concerned the time involved in preparation for the hearing on the motion to modify. No evidence was presented regarding the amount of attorney's fees on appeal. Thus, the trial court abused its discretion by awarding attorney's fees to Philip for this appeal. *See MacCallum v. MacCallum*, 801 S.W.2d 579, 587 (Tex. App.—Corpus Christi 1990, writ denied) (holding that former wife was not entitled to attorney's fees on former husband's appeal of his action seeking modification of child support and visitation, where all evidence related to attorney's fees specifically concerned time involved in preparation for hearing on motion to modify, and no evidence

14

was presented regarding amount of attorney's fees on appeal). We sustain Barbara's fourth issue.

### 2. Attorney's Fees Incurred Preparing for the Modification

In her fifth issue, Barbara argues that the trial court abused its discretion by not showing good cause to award Philip attorney's fees for the underlying modification action. Because Barbara is the prevailing party on appeal respecting the modification of the geographical restriction, we need not address her fifth issue. *See In re C.C.J.*, 244 S.W.3d 911, 924 (Tex. App.—Dallas 2008, no pet.). Rather, we remand the issue of attorney's fees for the underlying modification action to the trial court. *Id.*

## IV. CONCLUSION

Having sustained Barbara's first, second, third, and fourth issues, we reverse the portion of the trial court's order granting modification of the geographical restriction and render judgment that Philip's proposed modification of the geographical restriction is denied, and we reverse and render regarding the trial court's awarding to Philip attorney's fees for appeal. Additionally, we reverse the portion of the trial court's order awarding the attorney's fees

pertaining to preparation of the modification to Philip and remand that issue to the trial court for reconsideration in light of this opinion.

                                        WILLIAM BRIGHAM
                                        JUSTICE

PANEL: LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: April 9, 2009